No. ___

**IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

**IN RE JUUL LABS, INC. ANTITRUST LITIGATION**

On Petition for Permission to Appeal from the United States District Court for the Northern District of California, San Francisco Division
No. 3:20-CV-02345-WHO
The Honorable William H. Orrick

# PETITION FOR REVIEW OF CLASS CERTIFICATION ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(F)

Lisa Blatt
Charles L. McCloud
Edward Pickup
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
(202) 434-5000

Jeremy Barber
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
(212) 294-8910

Beth Wilkinson
James M. Rosenthal
Daniel Epps
David Friedman
Jenna P. Swarbrick
Guus Duindam
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000

*Counsel for Petitioners-Defendants Altria Group, Inc., and Altria Enterprises, LLC*

David I. Gelfand
Jeremy J. Calsyn
Nowell D. Bamberger
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 974-1752

*Counsel for Petitioner-Defendant Juul Labs, Inc.*

Mark C. Hansen
Michael J. Guzman
David L. Schwarz
Andrew Skaras
Stephanie E. Levin
KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Petitioners-Defendants Nicholas Pritzker and Riaz Valani*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

QUESTIONS PRESENTED ........ 4

STATEMENT OF THE CASE ........ 5

A. Factual Background. ........ 5

B. Proceedings Below. ........ 6

C. The Class Certification Order. ........ 7

REASONS FOR GRANTING THE PETITION ........ 8

I. CERTIFICATION OF THE INDIRECT PLAINTIFFS' MULTISTATE CLASSES MERITS REVIEW ........ 19

II. CERTIFICATION OF THE DIRECT PURCHASERS CLASS MERITS REVIEW ........ 21

CONCLUSION ........ 30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .......... 27

*AT&T Mobility LLC v. AU Optronics Corp.*,
707 F.3d 1106 (9th Cir. 2013) .......... 11, 21

*AT&T Mobility v. Concepcion, LLC*,
563 U.S. 333 (2011) .......... 3

*Barraza v. C. R. Bard Inc.*,
322 F.R.D. 369 (D. Ariz. 2017) .......... 18

*Blain v. Smithkline Beecham Corp.*,
240 F.R.D. 179 (E.D. Penn. 2007) .......... 18

*Briseno v. ConAgra Foods*,
674 F. App'x 654 (9th Cir. 2017) .......... 29

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .......... 18, 19

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .......... 9, 20, 30

*Chen v. L.A. Truck Ctrs., LLC*,
444 P.3d 727 (Cal. 2019) .......... 14

*Deiter v. Microsoft Corp.*,
436 F.3d 461 (4th Cir. 2006) .......... 24, 27

*Gen. Tel. Co. S.W. v. Falcon*,
457 U.S. 147 (1982) .......... 25

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .......... 2

*In re Am. Med. Sys.*,
75 F.3d 1069 (6th Cir. 1996) .......... 20

*In re Auto. Parts Antitrust Litig.*,
2019 WL 626143 (E.D. Mich. 2019) .................................................. 25

*In re Bridgestone/Firestone, Inc.*,
288 F.3d 1012 (7th Cir. 2002) .................................................. 21, 29

*In re Capacitors Antitrust Litigation*,
2020 WL 6462393 (N.D. Cal. 2020) .................................................. 11, 16

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2006 WL 1530166 (N.D. Cal. 2006) .................................................. 29

*In re Graphics Processing Units Antitrust Litigation (GPU)*,
253 F.R.D. 478 (N.D. Cal. 2008) .................................................. 24, 25, 28

*In re HIV Antitrust Litigation*,
2022 WL 22609107 (N.D. Cal. 2022) .................................................. 11, 13, 15, 16

*In re Korean Ramen Antitrust Litig.*,
2017 WL 235052 (N.D. Cal. 2017) .................................................. 21

*In re Lithium Ion Batteries Antitrust Litig.*,
853 Fed. App'x 56 (9th Cir. 2021) .................................................. 29

*In re Lithium Ion Batteries Antitrust Litig.*,
2017 WL 1391491 (N.D. Cal. 2017) .................................................. 28

*In re Milk Prods. Antitrust Litig.*,
195 F.3d 430 (8th Cir. 1999) .................................................. 24

*In re Optical Disk Drive Antitrust Litig.*,
2016 WL 467444 (N.D. Cal. 2016) .................................................. 21

*In re Optical Disk Drive Antitrust Litigation (ODD)*,
303 F.R.D. 311 (N.D. Cal. 2014) .................................................. 24

*In re Tableware Antitrust Litig.*,
241 F.R.D. 644 (N.D. Cal. 2007) .................................................. 26

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010) .................................................. 29

*Kim v. Allison*,
87 F.4th 994 (9th Cir. 2023)....................25

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987)....................26, 27

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
313 U.S. 487 (1941)....................14

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012)....................*passim*

*Norgart v. Upjohn Co.*,
981 P.2d 79 (Cal. 1999)....................13

*Nutraceutical Corp. v. Lambert*,
586 U.S. 188 (2019)....................8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022)....................9

*Prado-Steiman ex rel. Prado v. Bush*,
221 F.3d 1266 (11th Cir. 2000)....................21, 29

*Stromberg v. Qualcomm Inc.*,
14 F.4th 1059 (9th Cir. 2021)....................15, 16, 17, 21

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011)....................12, 13

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996)....................18, 19, 20

*Ward v. United Airlines, Inc.*,
466 P.3d 309 (Cal. 2020)....................10

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001)....................18, 19

**Statutes**

15 U.S.C. §§ 1 & 7 .......... 6

15 U.S.C. § 18 .......... 6, 7

Cal. Bus. & Prof. Code § 16700 .......... 2

**Rules**

Fed. R. App. P. 32(f) .......... 1

Fed. R. Civ. P. 23(a)(4) .......... 25

Fed. R. Civ. P. 23(b)(3) .......... 9, 15

Fed. R. Civ. P. 23(f) .......... *passim*

Ninth Circuit Rule 28 .......... 1

Rule 23 .......... 28

Rule 23(a) .......... 3

## PRELIMINARY STATEMENT

These consolidated antitrust cases concern Altria's former investment in JUUL Labs (JLI), maker of the JUUL e-cigarette. The Federal Trade Commission once challenged that investment, claiming Altria conspired with JLI to withdraw its own e-cigarettes from the market prior to the investment. After a trial in which an administrative law judge rejected those conspiracy allegations, Altria voluntarily unwound its investment, and the FTC dropped its suit. In hopes of a massive payday, Plaintiffs in these copycat suits pressed on.

The district court certified several sweeping, multi-jurisdictional classes of disparate groups of direct and indirect purchasers, potentially exposing defendants to a billion-plus dollars in damages. In so doing, the court ignored its obligations at the certification stage and relied on dubious reasoning to exacerbate intra-Circuit divisions of authority on important legal questions. The certification order is flawed as a whole, but this Petition focuses on two issues of particular salience to the sound administration of justice in this Circuit and to sensible class action practice throughout this country, each of which satisfies Rule 23(f)'s

requirements. Review is urgently needed to correct these errors and provide guidance for other courts in this Circuit.

*First*, the court certified two classes applying California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, to indirect purchasers in 27 different jurisdictions that have "repealed" the *Illinois Brick* rule limiting federal antitrust suits to direct purchasers. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). The court's decision to apply the Cartwright Act to multi-state classes deepened intra-Circuit divisions on two interrelated questions this Court has never resolved: (1) whether courts can apply the Act extraterritorially to out-of-state purchases, and (2) whether California's purported interest in applying its law outside its borders trumps other states' interests in regulating commercial transactions within their own borders under their own laws. The answer to both these questions should be "no," and allowing the court's contrary ruling to stand would turn California law into the de facto rule for indirect purchaser antitrust suits across the country, regardless of the policy judgments of other states. The court's unprecedented solution to this problem—applying California law for liability purposes while apparently applying other jurisdictions' laws in

resolving damages later—makes things worse, not better, turning the litigation of these cases (and others to come) into legal morasses resolved under an irrational legal regime.

*Second*, the court erroneously held that the direct purchaser class—which consists mostly of sales to large distributors and retailers who purchased JUUL products directly from JLI in bulk for resale—may be represented by individuals who bought trivial quantities of JUUL on JLI's website. Multiple courts in this Circuit (and elsewhere) have taken a different view, holding that such individuals cannot satisfy Rule 23(a)'s typicality and adequacy requirements as representatives of larger businesses. This Court should clarify the law on this issue, which has major implications for class actions: enabling certification of overbroad classes radically increases "the risk of 'in terrorem' settlements" of "questionable claims." *Cf. AT&T Mobility v. Concepcion LLC*, 563 U.S. 333, 350 (2011) (citation omitted).

Rule 23(f) exists to permit review of dubious, and dangerously consequential, class certifications like the one below. This Court should grant review, correct the district court's errors, and provide needed guidance on the important questions the case presents.

## QUESTIONS PRESENTED

1. Whether this Court should review the certification of sprawling classes that would apply California's Cartwright Act extraterritorially to indirect purchasers in 27 different jurisdictions.

2. Whether this Court should review the certification of a nationwide class of direct purchasers where the only class representatives are individual consumers whose claims are not typical of, and who cannot adequately represent, the commercial distributors and retailers constituting the overwhelming majority of direct sales.

## STATEMENT OF THE CASE

### A. Factual Background.

In December 2018, Altria invested $12.8 billion to acquire 35 percent of JLI. The investment agreement included a limited noncompete prohibiting Altria from developing new e-cigarettes while providing post-transaction services to JLI that would give Altria access to JLI's proprietary information.

Plaintiffs allege that, in addition to the limited noncompete, Altria, JLI, and JLI directors Nicholas Pritzker and Riaz Valani secretly agreed to withdraw Altria's existing e-cigarette products from the market as a precondition to the investment, inflating JUUL's prices to this day, more than seven years later. But contemporaneous evidence shows that Altria withdrew those products because they were losing money, faced major regulatory obstacles, and—unlike JUUL—failed to convert cigarette smokers. Indeed, Altria pursued its investment in JLI precisely because of these problems with its own products.

In April 2020, the FTC issued an administrative complaint challenging the Altria-JLI transaction, raising essentially the same allegations that Plaintiffs here copy. After a 13-day trial, an ALJ

dismissed the complaint. He concluded that the case was "highly circumstantial" and based on "pieces of writings, sometimes snippets—often ambiguous, lacking in context, and unexplained," and that by contrast Altria had "laid out alternative explanations for removing its products that are logical and supported by substantial, credible evidence, including contemporaneous documents." ADD-148. The FTC ultimately dismissed the case after Altria voluntarily unwound its investment in JLI. ADD-51.

### B. Proceedings Below.

Days after the FTC complaint, three sets of plaintiffs filed suit, raising antitrust claims on behalf of distinct groups of JUUL purchasers.

The Direct Purchaser Plaintiffs (DPPs) sued Altria, JLI, Pritzker, and Valani under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 7 of the Clayton Act, 15 U.S.C. § 18. Although the DPPs' proposed class representatives are individuals who purchased small amounts of JUUL for personal use on JLI's website, the proposed class also encompasses distributors and retailers who bought millions of dollars of JUUL for resale and are responsible for almost 93% of direct sales. Such

commercial purchases nearly always involved tailored contractual agreements with JLI.

The Indirect Reseller Plaintiffs (IRPs) sued Altria and JLI on behalf of businesses in 31 jurisdictions that purchased JUUL products indirectly for resale. ADD-457. The Indirect Purchaser Plaintiffs (IPPs) sued Altria and JLI on behalf of individuals in the same jurisdictions who purchased JUUL products indirectly for personal use. ADD-416. Both sets of Indirect Plaintiffs sought to certify a multistate class applying California's Cartwright Act to the claims of class members residing in these 31 jurisdictions. Alternatively, they sought certification of separate classes for each individual state where a named plaintiff resides (six states for the IPPs and three for the IRPs).

### C. The Class Certification Order.

On February 26, 2026, the court issued its final order granting certification.[1] The court granted the DPPs' class certification motion in

[1] On February 5, 2026, the court entered a "Short Order" "[f]or purposes of allowing the parties to proceed to meet and confer on class notice and the notice plan." ADD-37. That order did not explain the reasoning underlying class certification, and the court accordingly tolled the deadline for Defendants' 23(f) petition "until I issue the further Order." ADD-37. Out of an abundance of caution, Defendants secured agreement from Plaintiffs that they would not challenge as untimely a

full. As to the Indirect Plaintiffs, the court largely granted the motions but slightly modified the proposed multistate classes "to exclude Arkansas, South Carolina, Tennessee, and Virginia, as those states do not allow class actions for the antitrust claims at issue." ADD-33. Although the court recognized that the laws of the remaining states differed from the Cartwright Act in significant respects, it asserted those differences could be resolved at trial "through jury instructions or a special verdict form where the jury is tasked with awarding only damages allowed" under those states' laws. ADD-31–32.

## REASONS FOR GRANTING THE PETITION

Rule 23(f) review is "most appropriate" where "(1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; or (3) the district court's class

---

petition filed within 14 days of the final certification order. *See Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019) ("Rule 23(f)'s time limitation . . . can be waived or forfeited by an opposing party.").

certification decision is manifestly erroneous." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

These factors weigh in favor of review. The ruling is not merely questionable; it is manifestly erroneous several times over. It presents important issues of class-action law, on which lower courts have split, that deserve this Court's guidance. And it exposes Defendants to more than a billion dollars in potential liability, creating significant settlement pressure.

## I. Certification Of The Indirect Plaintiffs' Multistate Classes Merits Review

To obtain class certification, the Indirect Plaintiffs each sought to apply California's Cartwright Act to JUUL purchasers in numerous jurisdictions that have repealed *Illinois Brick*. Plaintiffs' request to apply the Cartwright Act was critical to their motion. After all, the court could not grant certification unless it found "that the questions of law or fact common to class members predominate." Fed. R. Civ. P. 23(b)(3). And where "the law of multiple jurisdictions applies" to a class, differences in state law can "overwhelm common issues and preclude predominance." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc.*

*v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022) (en banc).

In finding that the Indirect Plaintiffs could establish predominance by applying the Cartwright Act to 27 different jurisdictions, the court erroneously resolved unsettled questions of law and broke from the reasoning of other district courts in this Circuit.

*Extraterritoriality*. At the outset, the court incorrectly determined that California's Cartwright Act governed out-of-state purchases of JUUL by non-Californians.

Such application of the Cartwright Act conflicts with California's presumption against extraterritoriality. Courts may not "give extraterritorial effect to legislative enactments absent an affirmative indication that such was the Legislature's intent." *Ward v. United Airlines, Inc.*, 466 P.3d 309, 317 (Cal. 2020). Here, the Indirect Plaintiffs have never identified any evidence of such an "affirmative indication" from the Legislature. *Id.* Nor has the California Supreme Court ever interpreted the Cartwright Act to grant a cause of action to non-residents who purchase products outside of California.

Nor has this Court resolved the question. In *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1110 n.8 (9th Cir. 2013), the Court expressly reserved "[t]he question of whether the Cartwright Act provides a cause of action based exclusively on out-of-state purchases," which was "not at issue in this case." *Id.*

Two district courts in this Circuit have concluded that the Cartwright Act likely lacks the extraterritorial effect needed to support a multistate class action. In *In re HIV Antitrust Litigation*, 2022 WL 22609107 (N.D. Cal. 2022), Judge Chen raised "doubts" about whether the Cartwright Act could be applied extraterritorially to plaintiffs' proposed 35-state class of purchasers in repealer states, but did not "resolve this issue definitively" because he rejected the class on choice-of-law grounds. *Id.* at *9, *14. Similarly, in *In re Capacitors Antitrust Litigation*, 2020 WL 6462393 (N.D. Cal. 2020), Judge Donato rejected classwide application of the Cartwright Act on choice-of-law grounds, but emphasized that skepticism about the Act's extraterritorial reach reinforced his conclusion, given that the plaintiffs had presented no "reason that might justify the application of the Cartwright Act outside of California." *Id.* at *7.

The decision below stands in direct contrast to these observations by other judges in this Circuit. The court improperly dismissed the extraterritoriality problem out of hand. Instead of applying (or even acknowledging) the presumption against extraterritoriality, it asserted only that Defendants had not cited cases where courts "declined certification solely because of extraterritoriality concerns." ADD-27. But California law demonstrates that applying the Cartwright Act to out-of-state purchases would be an impermissible extraterritorial extension, precluding certification.

*Sullivan v. Oracle Corp.*, 254 P.3d 237 (Cal. 2011), shows why. Employees there (including non-residents) challenged Oracle's failure to pay overtime under California's Unfair Competition Law (UCL). Oracle was a California resident and the employee-classification decisions used to justify the failure to pay overtime were made in California. *Id.* at 239–40. Nevertheless, the court held that the UCL did not apply to non-residents' claims for work performed outside California. *Id.* at 249. Because "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially," the presumption to the contrary "applies to

the UCL in full force." *Id.* at 248. Even though Oracle made the classification decision in California, "the failure to pay overtime when due" is "what creates liability." *Id.* And for non-residents performing work elsewhere, that failure occurred outside of California.

*Sullivan* maps squarely onto these facts. *See In re HIV*, 2022 WL 22609107 at *8–*9 (applying *Sullivan* in concluding that "the presumption against extraterritoriality applies" to the Cartwright Act). The Indirect Plaintiffs claim they were injured by overpaying for JUUL due to an alleged conspiracy. Their causes of action thus accrued when they purchased JUUL products at allegedly inflated prices. *See Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999) (as a "general rule," accrual occurs only "when the cause of action is complete with all of its elements"). And for non-residents, that act of purchasing—"what creates liability"—occurred outside of California. *See Sullivan*, 254 P.3d at 248. Accordingly, the Cartwright Act does not apply to such purchases.

*Choice of Law*. Even if the Cartwright Act could apply extraterritorially, the court erred in concluding under choice-of-law principles that California law governs the out-of-state class members'

claims, and by deferring until trial consideration of several conflicts with California law.

California choice-of-law rules govern. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). California applies a governmental-interest test analyzing: (1) "the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question," (2) "each jurisdiction's interest in the application of its own law under the circumstances of the particular case," and (3) "the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired" by failure to apply its law. *Chen v. L.A. Truck Ctrs., LLC*, 444 P.3d 727, 730–31 (Cal. 2019) (quotation marks omitted).

This Court has twice held that this test foreclosed certification of multistate classes bringing claims under California law. In *Mazza*, the Court vacated certification of a "nationwide class with members in 44 jurisdictions" raising claims under California consumer-protection law. 666 F.3d at 589. This Court concluded that there were material differences between the law of California and other jurisdictions, that each state had an interest in applying its own laws, that applying

California law would impair the other states' "ability to calibrate liability to foster commerce," and that "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 590–94.

Later, this Court relied on *Mazza* to vacate certification of a 44-jurisdiction Cartwright Act class. *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059 (9th Cir. 2021). Although *Stromberg* stressed differences between California—an *Illinois Brick*-repealer state—and non-repealer states, *id.* at 1068–69, it also noted that "[e]ven among the repealer states, the various state laws are hardly uniform" and thus it was "not clear that a single class of all repealer state Plaintiffs could be certified under Rule 23(b)(3)," *id.* at 1074.

Applying these decisions, Judge Chen in *HIV Antitrust Litigation* rejected "application of the Cartwright Act to an *Illinois Brick* repealer class." 2022 WL 22609107, *12. Judge Chen found that there were material differences between the Cartwright Act and some repealer states' laws, that "the other repealer states still have an interest in having their own laws apply with respect to purchases/reimbursements made in their own jurisdictions and the scope of antitrust enforcement in their states," and that "those states' interests would be more impaired if

their policies were subordinated to the policies of California." *Id.* at *12–*14. Similarly, in a pre-*Stromberg* case, Judge Donato stressed the differences among repealer states' laws to deny certification of a putative 31-state Cartwright Act class. *In re Capacitors*, 2020 WL 6462393, *5–*7.

Those courts' reasoning produces the same result here. *First*, there are material differences between the antitrust laws of the various repealer states in the multistate classes proposed by the Indirect Plaintiffs. Defendants documented those differences at length below. *See* ADD-553–57. Briefly, as *Stromberg* itself noted, "state repealer laws vary as to the type of law the repeal applies to; who can sue for damages; and the amount or type of damages indirect purchasers can recover." 14 F.4th at 1068–69 (footnotes omitted).

*Second*, each state has a substantial interest in applying its own laws to in-state sales. "It is a principle of federalism that 'each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.'" *Mazza*, 666 F.3d at 591 (citation omitted). For example, states that (unlike California) bar or limit treble damages may have sought "to create a more favorable business climate for the

companies that the state seeks to attract to do business in the state." *Id.* at 592.

*Finally*, other jurisdictions' interests, and not California's, would be most impaired here. In *Stromberg*, for example, the only defendant was a California resident. 14 F.4th at 1069. Notwithstanding California's interest in regulating its residents' conduct, the Court concluded that "California's interest is attenuated where its law is applied to consumers purchasing cellphones in non-repealer states." *Id.* at 1074. It would fundamentally impair those other states' "policy" to "allow[] California to set antitrust enforcement policy for [more than half] the country." *Id.*

The district court impermissibly sidestepped these problems. The court recognized that significant differences in states' damages rules likely raised "true conflicts" with California law. ADD-31–32. But it proposed an unprecedented solution to those conflicts, suggesting those states' interest in having their law applied could be preserved by applying the differing state *damages* laws to Plaintiffs within the same 27-jurisdiction class—apparently while still applying the Cartwright Act's *liability* provisions to all class members' claims. ADD-32.

No Circuit appears ever to have approved this hybrid state-law "solution" to a predominance problem. *Cf. Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 194 (E.D. Penn. 2007) (rejecting plaintiffs' request to apply "different states' laws" to parts of claims in a "multi-state class action"). Nor did the court below justify its novel approach. The court never determined which state laws presented true conflicts (and thus would apply alongside California law at trial), ignored how applying multiple laws to the classes impacted predominance, and failed to explain how those differences could be manageably addressed at trial.

District courts must analyze "which law will apply *before* making a predominance determination"—especially when "there are variations in applicable state law." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (emphasis added); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741–42 (5th Cir. 1996) (similar) (collecting cases); *Barraza v. C. R. Bard Inc.*, 322 F.R.D. 369, 383 (D. Ariz. 2017) (similar). For example, in *Castano* (cited approvingly by this Court[2]), the Fifth Circuit found insufficient a "cursory review of state law variations,"

[2] *See, e.g.*, *Zinser*, 253 F.3d at 1189; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

which involved examination of sample interrogatories and verdict forms, various surveys of the relevant state laws, and two orders certifying multistate classes. 84 F.3d at 742–43.

Here, even after recognizing several likely "true conflicts," the court conducted *no* analysis of these state-law differences before asserting, without explanation, that predominance would not be affected. That was error. *Zinser*, 253 F.3d at 1189; *Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the "district court abused its discretion by not adequately considering the predominance requirement before certifying" a multistate class).

The court also ignored "the likely difficulties in managing a class action" under its novel, hybrid approach. Fed. R. Civ. 23(b)(3)(D). Where different laws govern different class members, plaintiffs must show "how the class trial could be conducted." *Valentino*, 97 F.3d at 1234. Yet the court failed altogether to explain how its proposal would work, deferring that question until "[a]fter liability is determined." ADD-32. That is no solution to a predominance problem. *See Zinser*, 253 F.3d at 1189 (discussing *Castano* and noting "court[s] cannot rely merely on assurances of counsel that any problems with predominance or

superiority can be overcome"); *In re Am. Med. Sys.,* 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states [in a nationwide class] differ, the district judge would face an impossible task of instructing a jury on the relevant law . . . ."); *Valentino*, 97 F.3d at 1233 (expressing approval of *In re Am. Med.*).[3]

* * *

The court therefore manifestly erred by certifying a multistate Cartwright Act class. But that is just the start of the problem. Rule 23(f) review is warranted when necessary to provide guidance on an "unsettled and fundamental issue of law relating to class actions." *Chamberlan*, 402 F.3d at 959. The permissibility of certifying a multistate indirect purchaser class raising Cartwright Act claims for repealer states is a recurring question in this Circuit that district courts have resolved differently—a situation that calls out for this Court's intervention, lest different defendants receive different outcomes within the very same

[3] The court noted in a footnote that Defendants did not raise a predominance objection to the few individual state classes that the Indirect Plaintiffs pursued in the alternative. ADD 32 (n.14). That is fundamentally different than what the court devised (and no party had requested): a 27-jurisdiction class in which an undefined number of different state laws may be applied only "[a]fter liability is determined." ADD-32.

courthouse. *See AT&T Mobility*, 707 F.3d at 1110 n.8; *Stromberg*, 14 F.4th at 1074.

While Judges Chen and Donato denied certification of such classes, *see supra* 17–18, two other decisions have certified such classes (one by the same district judge here), albeit with cursory analysis. *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *14 (N.D. Cal. 2016) (Seeborg, J.); *In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *22 (N.D. Cal. 2017) (Orrick, J.). Without prompt guidance, lower courts will continue to diverge. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275 (11th Cir. 2000) (Rule 23(f) review is appropriate when an issue "seems likely to arise repeatedly in the future"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (granting Rule 23(f) petition because choice-of-law ruling "would be of considerable import to other suits").

## II. Certification Of The Direct Purchasers Class Merits Review.

Distributors and self-distributing retailers are responsible for the overwhelming majority of direct purchases (approximately 93%). ADD-404. Yet the three DPP class representatives are individuals who each purchased less than $2000 of JUUL online for personal use. ADD-350

(Plaintiff Sieber: "about $907"); ADD-369 (Plaintiff Black: $1928.19); ADD-374 (Plaintiff Thompson: "around $900"). These Plaintiffs' claims are not typical of the sweeping class the court certified. Nor can the Plaintiffs adequately represent that class. Even if they could satisfy Rule 23's other requirements, the named Plaintiffs could at most represent only individual purchasers. They lack any incentive to establish claims for commercial distributors whose transactions with JLI differed in many respects from the named Plaintiffs' individual purchases.

Individual online purchasers (who are responsible for only 6.6% of direct sales), ADD-404, are fundamentally different from the large businesses they seek to represent. While most online purchasers are bound by the Terms and Conditions of JLI's website, each distributor negotiated a separate purchasing contract with JLI, covering terms like price, advertising, and reselling. *See, e.g.*, ADD-67–68. In addition, distributors negotiated rebate agreements unavailable to online purchasers. The terms in such agreements were subject to distributor-specific negotiations. *See* ADD-511 (n.8). Indeed, many of the largest distributors drafted agreement terms themselves. *See, e.g.*, ADD-54–55. Complicating matters further, at least 70 such agreements contain

forum-selection clauses mandating venue elsewhere, and nearly all of them contain agreements to arbitrate. ADD-572, ADD-574–87. By contrast, individual purchasers had no opportunity to negotiate on price or any other terms. ADD-354 (Sieber); ADD-366–67 (Black); ADD-377–78 (Thompson).

Individuals and distributors also were subject to different pricing policies. JLI made no change to pricing for online pod purchases throughout the class period until July 2022. ADD-61–63; ADD-382–83. Individuals therefore paid the same price for pods in 2018—when Altria's products were on the market—as they did for more than three years after Altria left the market. *Id.* JLI treated distributors differently. In late 2018, it imposed a 13-cent list price increase on pods for distributors while maintaining its manufacturer's suggested retail price in order to recapture some of the margin distributors were earning without impacting retail prices. ADD-513. During late 2018 and early 2019, JLI also adjusted rebates and discounts for distributors on a distributor-by-distributor basis. ADD-513–14.

Faced with similar disaparities, courts in this Circuit and elsewhere have found individual purchasers' claims not typical of a

broader class including large distributors. In *In re Graphics Processing Units Antitrust Litigation (GPU)*, 253 F.R.D. 478 (N.D. Cal. 2008), the named plaintiffs, individuals who "each purchased a single graphics card through [the defendant's] website at retail prices," could not show typicality for a class encompassing wholesale purchasers who "purchased a vast array of products on individually negotiated terms." *Id.* at 489.

Relying on *GPU,* Judge Seeborg rejected a similar class in *In re Optical Disk Drive Antitrust Litigation (ODD)*, 303 F.R.D. 311 (N.D. Cal. 2014). The named plaintiffs, "three small companies and four individuals" who purchased optical disk drives (ODDs) "at nonnegotiable, list prices through a defendant's distribution subsidiary or retail website" could not establish typicality where the putative class encompassed many other purchasers "whose volumes and means of ODD purchases do not compare" and who "typically negotiated prices." *Id.* at 317.

The Fourth and Eighth Circuits have taken similar approaches. *See Deiter v. Microsoft Corp.*, 436 F.3d 461, 467–68 (4th Cir. 2006) (plaintiffs who purchased "either on-line or by telephone" and paid "fixed prices" not typical of large enterprise customers); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999) (plaintiff that "made only small

wholesale purchases at list price" could not show typicality where "many sales to class members were made at cost-plus formula prices unrelated to defendants' list prices"); *see also In re Auto. Parts Antitrust Litig.*, 2019 WL 626143, at *3, *11 (E.D. Mich. 2019) (denying certification where "relatively small distributors" purported to represent much larger manufacturer purchasers). The decision below thus creates divisions of authority within this Circuit as well as with other Circuits.

For similar reasons, the named Plaintiffs also cannot "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "tend[s] to merge" with the typicality requirement. *Gen. Tel. Co. S.W. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). And given the significant differences between individual purchasers who paid the list price and businesses who paid negotiated prices, the named Plaintiffs "simply do not have the appropriate incentive to establish antitrust violations with respect to all of the absent class members." *In re GPU*, 253 F.R.D. at 490.

There are ample additional reasons to doubt the named Plaintiffs' ability to "prosecute the action vigorously on behalf of" distributors. *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023). Two of the three were not

even aware they were seeking to represent anyone other than individual online purchasers like themselves. ADD-356–57 (Sieber); 3-ADD-362–63 (Black). None professes any experience with product distribution or how a business would evaluate these claims. While a representative need not have "a detailed understanding of the theories and facts of the case," she "must have some minimal familiarity with the litigation." *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 649 (N.D. Cal. 2007); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987) ("[C]ourts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.").

The court below acknowledged the authorities finding individuals atypical of or inadequate to represent the interests of larger commercial purchasers, but summarily concluded those authorities did not apply "given the posture of this case." ADD-5. The court reasoned that conceded differences between DPPs' representatives and the distributors whose purchases make up 93% of the proposed class pose no problem because "there are only two defendants, three channels of distribution . . . and one

set of products." ADD-5. But that gets the law backwards. Typicality analysis "must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Deiter*, 436 F.3d at 467. Whether few or many channels of distribution, what matters is whether those channels are different or similar. And the court's other basis for finding typicality—that "*all* channel prices" were allegedly inflated, ADD-6 (emphasis in original)—operates at an "unacceptably general" level. *Deiter*, 436 F.3d at 467 (individuals were not typical of class simply because "all class members . . . were injured" by having paid an "artificially inflated" price). It is not enough for class representatives' claims and injuries to resemble those of absent class members—representatives must "'possess the *same* interest and suffer the *same* injury.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997) (citations omitted) (emphases added).

Furthermore, while the court acknowledged that "[t]he enforceability of forum selection" and arbitration clauses in JLI's agreements with commercial distributors "may have to be addressed" in the future, it said nothing to explain why the named Plaintiffs had an adequate interest in litigating those issues. *See* ADD-8–9. In fact, the

class representatives have no stake in the court's interpretation of those agreements. And "[i]t does not suffice that *counsel* have an incentive to prove the wholesalers' claims . . . [T]he test is whether the clients themselves, who ultimately control and drive the litigaton, have the requisite typicality under Rule 23." *In re GPU*, 253 F.R.D. at 490 (citation omitted) (emphasis original).

Finally, the court asserted the named DPPs had the requisite "basic level of knowledge about this case," even as it acknowledged that they knew nothing about how distributors in the class operated—and two did not even know they represented "anyone other than online purchasers." ADD-6–7. Rule 23's "threshold of knowledge required" for class representatives may be low, but its requirements cannot be meaningless.

This issue warrants Rule 23(f) review. As Judge Alsup observed in *GPU*, "[a]ntitrust decisions have been mixed in determining whether certification is warranted where complex chains of distribution with highly varying purchasers and products are involved" and this Court "has yet to speak." 253 F.R.D. at 483–84. Some courts in this Circuit have reached results in tension with the cases described above. *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1391491, at *7 (N.D. Cal. 2017)

(finding typicality satisfied even though named plaintiffs were individuals who bought "at non-negotiable prices" and the class was "comprised substantially of business entities and other institutional end-users who purchased products in bulk and had the power to negotiate pricing"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 304–05 (N.D. Cal. 2010) (similar), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4–*6 (N.D. Cal. 2006) (similar). Moreover, given the significant settlement pressure created when courts certify overbroad classes, the issue is likely to evade this Court's review outside of the 23(f) process. *Cf. In re Lithium Ion Batteries Antitrust Litig.*, 853 F. App'x 56, 56 (9th Cir. 2021) (mem.) (approving "third and final round of settlements" after district court certified a class including large businesses).

Rule 23(f) exists precisely to enable review of important and recurring issues like these. *See In re Bridgestone*, 288 F.3d at 1016; *Prado-Steiman*, 221 F.3d at 1275; *see also, e.g.*, *Briseno v. ConAgra Foods*, 674 F. App'x 654, 656 (9th Cir. 2017) (mem.) (addressing typicality challenge in Rule 23(f) appeal).

* * *

Rule 23(f) provides a path for immediate review of class certification decisions for a reason. It "furnishes an avenue, if the need is sufficiently acute, whereby the court of appeals can take earlier-than-usual cognizance of important, unsettled legal questions, thus contributing to both the orderly progress of complex litigation and the orderly development of law." *Chamberlan*, 402 F.3d at 958. This case presents not one but multiple such questions. Immediate review is necessary to ensure intra-Circuit harmony and maintain the order of class action law.

## CONCLUSION

This Court should grant the petition for review.

Respectfully submitted,

*/s/Beth Wilkinson*
Beth Wilkinson
James M. Rosenthal
Daniel Epps
David Friedman
Jenna P. Swarbrick
Guus Duindam
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
(202) 847-4000

Jeremy Barber
WILKINSON STEKLOFF LLP
130 W 42nd Street, 24th Floor
New York, NY 10036
(212) 294-8910

Lisa Blatt
Charles L. McCloud
Edward Pickup
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC 20024
(202) 434-5000

*Counsel for Petitioners-Defendants Altria Group, Inc., and Altria Enterprises, LLC*

David I. Gelfand
Jeremy J. Calsyn
Nowell D. Bamberger
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Petitioner-Defendant Juul Labs, Inc.*

Mark C. Hansen
Michael J. Guzman
David L. Schwarz
Andrew Skaras
Stephanie E. Levin
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

*Counsel for Petitioners-Defendants Nicholas Pritzker and Riaz Valani*

**STATEMENT OF RELATED CASES**

Defendants state, pursuant to Ninth Circuit Rule 28-2.6, that they are unaware of any cases related to this appeal.

March 12, 2026

*/s/Beth Wilkinson*
*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULES 5-2 AND 32-3

I certify that the attached petition includes 5,552 words as counted by the word-counting feature of Microsoft Word (not including those portions excluded by Fed. R. App. P. 32(f)) and, so, complies with Circuit Rules 5-2 and 32-3.

March 12, 2026

*/s/Beth Wilkinson*______
*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system. I also caused a copy of the petition and attached materials to be served via electronic mail on the following recipients:

Joseph R. Saveri
Ronnie Spiegel
David H. Seidel
Diane S. Rice
Itak Moradi
Trevor Young
**SAVERI LAW FIRM, LLP**
550 California Street, Suite 910
San Francisco, California 94104
(415) 500-6800
jsaveri@saverilawfirm.com
rspiegel@saverilawfirm.com
dseidel@saverilawfirm.com
drice@saverilawfirm.com
imoradi@saverilawfirm.com
tyoung@saverilawfirm.com

Michael M. Buchman
Christopher Hydal
**SAVERI LAW FIRM, LLP**
780 Third Avenue, Suite 1200
New York, NY 10017
Telephone: (347) 790-0069
Facsimile: (347) 790-0029
mbuchman@saverilawfirm.com
chydal@saverilawfirm.com

*Interim Lead Counsel for Direct Purchaser Plaintiffs and the Class*

John D. Radice
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, NJ 08540
(646) 245-8502
jradice@radicelawfirm.com

*Counsel for Direct Purchaser Plaintiffs*

Elana Katcher
**KAPLAN FOX & KILSHEIMER LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
(212) 687-1980
ekatcher@kaplanfox.com

Solomon B. Cera
**CERA LLP**
50 California St. Suite 1500
San Francisco, CA 94111
(415) 777-2230
scera@cerallp.com

C. Andrew Dirksen
**CERA LLP**
529 Main Street, Suite P200
Boston, MA 02129
(857) 453-6555
cdirksen@cerallp.com

*Counsel for Indirect Reseller Plaintiffs*

Robin F. Zwerling
**ZWERLING, SCHACHTER & ZWERLING, LLP**
41 Madison Avenue
New York, NY 10010
(212) 223-3900
rzwerling@zsz.com

Thomas H. Burt
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
(212) 545-4600
burt@whafh.com

Betsy C. Manifold
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
(619) 239-4599
manifold@whafh.com

Fred T. Isquith, Sr.
**ISQUITH LAW PLLC**
103 East 84th Street
New York, NY 10028
(718) 775-6478
isquithlaw@gmail.com

Merle C. Meyers
Michele Thompson
**MEYERS LAW GROUP, P.C.**
44 Montgomery St. Suite 1010
San Francisco, CA 94104
(415) 362-7500
mmeyers@meyerslawgroup.com
mthompson@meyerslawgroup.com

*Class Counsel for the Indirect Purchaser Plaintiffs*

David I. Gelfand
Jeremy J. Calsyn
Nowell D. Bamberger
Caleb J. Robertson
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2112 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 974-1752
(202) 974-1599
dgelfand@cgsh.com
jcalsyn@cgsh.com
nbamberger@cgsh.com
cjrobertson@cgsh.com

*Counsel for Defendant Juul Labs, Inc.*

Mark C. Hansen
Michael J. Guzman
David L. Schwarz
Andrew Skaras
Stephanie E. Levin
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
mhansen@kellogghansen.com
mguzman@kellogghansen.com
dschwarz@kellogghansen.com
askaras@kellogghansen.com
slevin@kellogghansen.com

*Counsel for Individual Defendants Pritzker & Valani*

March 12, 2026

*/s/Beth Wilkinson*
*Counsel for Petitioners*