No. 26-1519

IN THE

# United States Court of Appeals for the Ninth Circuit

IN RE: JUUL LABS INC., ANTITRUST LITIGATION

JUUL LABS, INC., ET AL.,

*Defendants-Petitioners*,

v.

DEVIN BLACK, ET AL.,

*Plaintiffs-Respondents.*

On Petition for Permission to Appeal from the United States District Court
for the Northern District of California
No. 3:20-cv-02345-WHO, District Judge William H. Orrick

## BRIEF OF IOWA AND 9 ADDITIONAL STATES AS AMICI CURIAE IN SUPPORT OF PETITIONERS AND LEAVE TO APPEAL

BRENNA BIRD
*Attorney General of Iowa*

ERIC H. WESSAN
*Solicitor General*

MARCH 19, 2026

PATRICK C. VALENICA
*Deputy Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Amici State of Iowa*

*(Additional counsel listed after signature block)*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

STATEMENT OF AMICUS CURIAE .................................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.    The District Court Got It Wrong: The Cartwright Act Does Not Authorize Regulation of Out-of-State Purchases. ........................................................... 3

        A.    The Cartwright Act's text does not overcome California's presumption against extraterritorial application. ......................................................... 3

        B.    The district court's extraterritoriality analysis was deficient, at best. ................ 4

    II.    The Territorial Reach of the Cartwright Act Bears Directly on Class Certification. ................................................................................................ 7

    III.    Applying California Law to Out-of-State Purchases Would Displace Other States' Sovereign Policy Choices. .............................................................. 8

        A.    States have a sovereign interest in regulating transactions within their borders. ................................................................................................. 8

        B.    The Constitution limits extraterritorial application of state law. ....................... 9

CONCLUSION ...................................................................................................... 10

ADDITIONAL COUNSEL ................................................................................... 12

CERTIFICATE OF COMPLIANCE .................................................................. 13

CERTIFICATE OF SERVICE ............................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .................................................................................. 3, 7

*California v. ARC Am. Corp.,*
490 U.S. 93 (1989) ..................................................................................... 8, 9

*California v. IntelliGender, LLC,*
771 F.3d 1169 (9th Cir. 2014) ..................................................................... 9

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) .......................................................................... 7

*Edgar v. MITE Corp.,*
457 U.S. 624 (1982) ................................................................................. 2, 10

*Healy v. Beer Inst.,*
491 U.S. 324 (1989) .............................................................................. 2, 5, 10

*Illinois Brick Co. v. Illinois,*
431 U.S. 720 (1977) ....................................................................................... 8

*In re Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) ...................................................................... 7

*In re Capacitors Antitrust Litig.,*
2020 WL 6462393 (N.D. Cal. Nov. 3, 2020)............................................. 3, 4

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
546 F.3d 981 (9th Cir. 2008) ..................................................................... 4, 8

*In re HIV Antitrust Litig.,*
2022 WL 22609107 (N.D. Cal. Sept. 27, 2022).......................................... 3, 4

*Mazza v. Am. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) ..................................................................... 3, 7

*Morrison v. Nat'l Austl. Bank Ltd.,*
561 U.S. 247 (2010) ....................................................................................... 4

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ............................................................................. 1, 2, 10

*Stromberg v. Qualcomm Inc.,*
14 F.4th 1059 (9th Cir. 2021) ............................................................. 1, 3, 5, 6

*Sullivan v. Oracle Corp.,*
254 P.3d 237 (Cal. 2011)........................................................................... 2, 4

**Statutes**

Cal. Bus. & Prof. Code §§ 16720–16727 ..................................................... 4

Iowa Code § 553.4.......................................................................................... 1

Iowa Code § 553.12........................................................................................ 9

## STATEMENT OF AMICUS CURIAE

The Attorneys General of Iowa and nine additional States are their States' chief law enforcement officers. Their interest in this case arises from two related responsibilities. *First*, Attorneys General are responsible for protecting their States' consumers and enforcing their States' antitrust laws. Amici States have enacted statutes governing competition and consumer protection within their jurisdictions. *See, e.g.*, Iowa Code §§ 553.4, 553.12. Those statutes reflect differing legislative judgments about the proper scope of antitrust liability, remedies, and enforcement. *Second*, Attorneys General have a sovereign interest in ensuring that transactions within their States are governed by their States' laws, not laws of another State.

The certification order below permits plaintiffs to invoke California's Cartwright Act to regulate purchases made outside California, including purchases made by residents of other States within those States.

If left undisturbed, that approach would allow California law to trump other States' differing policy choices—raising serious federalism concerns. It displaces the policy choices of the State where the transaction occurred and substitutes those of the forum State. The Constitution and settled principles of state sovereignty do not permit such extraterritorial application of state law. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985).

Amici submit this brief in support of granting the Rule 23(f) petition to protect those sovereign interests and to ensure that the territorial limits of state law are respected in multistate class actions. This Court has recognized that the geographic reach of California's Cartwright Act remains unresolved. *See Stromberg v. Qualcomm Inc.*,

14 F.4th 1059, 1074–75 (9th Cir. 2021). Because the order below permits California law to govern transactions occurring wholly outside California—and because that issue may determine whether the class may be certified at all—this Court should grant the petition.

## SUMMARY OF ARGUMENT

This Court should grant the Rule 23(f) petition. The district court certified a multistate class under California's Cartwright Act that includes non-California consumers who made purchases in their home States. In other words, the certification order allows California antitrust law to govern purchases made by Iowans in Iowa.

That approach raises serious extraterritoriality problems. Yet the district court certified the class while breezing by any extraterritoriality analysis. Had it done the analysis, it would have recognized the federalism concerns. Instead, it devoted one paragraph to the issue before moving on.

California follows a strong presumption against extraterritorial application of its statutes. Unless the Legislature clearly enacts extraterritorial legislation, California statutes apply only to conduct occurring within California. *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011). Nothing in the Cartwright Act shows an intent to regulate purchases made entirely outside California by residents of other States.

Applying California law to those transactions also raises constitutional concerns. The Due Process Clause limits a forum State's authority to apply its law to claims lacking a meaningful connection to the forum. *Shutts*, 472 U.S. at 821–22. And the Constitution reflects a broader principle that States may not regulate commerce occurring wholly outside their borders. *See Healy v. Beer Inst.*, 491 U.S. 324, 336–37 (1989); *Edgar v. MITE Corp.*, 457 U.S. 624, 642–43 (1982).

The certification order largely bypassed that analysis. Although the order acknowledged that the class includes out-of-state purchases, it did not meaningfully address whether the Cartwright Act may govern those transactions. The answer is not obvious and thus warrants analysis. Other courts in the Northern District of California have recognized the concerns raised by applying California antitrust law to "actual sales out of state." *See In re HIV Antitrust Litig.*, 2022 WL 22609107, at *9 (N.D. Cal. Sept. 27, 2022); *In re Capacitors Antitrust Litig.*, 2020 WL 6462393, at *7 (N.D. Cal. Nov. 3, 2020). And this Court acknowledged that the issue remains an open question. *See Stromberg*, 14 F.4th at 1074–75.

That open question is worth deciding now, not later. Indeed, the extraterritoriality question is logically antecedent to class certification. If California law cannot govern purchases made outside California, then the certified class necessarily includes claims governed by the laws of many other States. And the differences among those laws likely defeat predominance under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012). If the Cartwright Act cannot apply extraterritorially, then there is no potential class outside California. This Court should grant review.

## ARGUMENT

### I. The District Court Got It Wrong: The Cartwright Act Does Not Authorize Regulation of Out-of-State Purchases.

#### A. The Cartwright Act's text does not overcome California's presumption against extraterritorial application.

California law begins with a strong presumption against extraterritorial application of its statutes. Without clear language that a law applies extraterritorially,

3

California statutes operate only within California. *Sullivan*, 254 P.3d at 248. That presumption reflects a basic principle of statutory interpretation: State legislatures ordinarily legislate with domestic conduct in mind. See *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).

Nothing in the Cartwright Act overcomes that presumption. The statute contains no language suggesting that California's Legislature intended to regulate purchases made outside California by residents of other States. *See* Cal. Bus. & Prof. Code §§ 16720–16727. To the contrary, courts applying the Cartwright Act generally require a meaningful connection to California before the statute may govern interstate conduct. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 985–88 (9th Cir. 2008). That requirement reflects the ordinary understanding that state antitrust statutes regulate competition affecting commerce within the State's borders.

The district court ignored that presumption, rendering its extraterritoriality analysis flawed from the outset.

**B.** **The district court's extraterritoriality analysis was deficient, at best.**

Courts confronting the Cartwright Act's territorial limits have recognized the risks inherent in applying it to transactions occurring entirely outside the State. Applying California law to "actual sales out of state" risks conflicts with other States' regulatory regimes. *In re HIV Antitrust Litig.*, 2022 WL 22609107, at *9; *see also In re Capacitors Antitrust Litig.*, 2020 WL 6462393, at *7. Such extraterritorial application risks subjecting a single interstate transaction to multiple and potentially inconsistent state antitrust regimes, allowing each State to impose its own regulatory standards on commerce occurring elsewhere.

That concern implicates a core constitutional principle. The dormant Commerce Clause prohibits a State from regulating commerce "wholly outside" its borders or projecting its regulatory policy into other jurisdictions. *Healy*, 491 U.S. at 336. If multiple States regulated out-of-state transactions this way, interstate firms could be forced to structure nationwide conduct to comply with the most restrictive state regime—effectively allowing one State to dictate the rules across the national market.

This Court has recognized that extraterritorial application of the Cartwright Act presents precisely this unresolved issue. *See Stromberg*, 14 F.4th at 1074–75 (declining to decide the geographic scope of the statute). Because the issue remains open, careful analysis is required before California law may apply to out-of-state transactions.

The district court did not perform that analysis. Defendants argued the Cartwright Act cannot be applied extraterritorially and that the proposed multistate class therefore rested on an impermissible extension of California law to out-of-state purchases. ECF No. 520-11, Defs.' Opp'n to Indirect Reseller Pls.' and Indirect Purchaser Pls.' Mots. for Class Certification at 16–18. Defendants explained that California statutes are subject to a strong presumption against extraterritorial application and that nothing in the Cartwright Act overcomes that presumption. *Id.*

The certification order did not engage with that argument. The court instead focused on two district court decisions Defendants cited—*In re HIV Antitrust Litigation* and *In re Capacitors Antitrust Litigation*. In those cases, the judges had questioned whether the Cartwright Act could apply to out-of-state transactions but denied or modified the proposed classes on other grounds. Without further analysis, the certification order dismissed the relevance of those cases because "neither judge

5

reached the question." ECF No. 635, Order Granting in Part Motions for Class Certification and Denying Motions to Strike or Exclude at 26–27.

But explaining why two prior cases do not control is not a substitute for the underlying legal analysis. Yet the district court never independently examined the Cartwright Act's territorial scope, its text, or California's presumption against extraterritorial application. Nor did the court determine whether California law could govern the out-of-state transactions in the certified class. Instead, the court proceeded directly to a choice-of-law inquiry. *Id.* That approach assumes the answer to a threshold question. Choice-of-law analysis applies only after determining that the forum statute may apply extraterritorially in the first place.

Here, the certified class includes transactions occurring wholly outside California. The court certified a multistate Cartwright Act class encompassing purchasers in numerous States, including transactions occurring in Iowa. *Id.* at 35. And the conduct that allegedly creates liability here occurs at the point of sale. *See Stromberg*, 14 F.4th at 1073 (explaining that in consumer cases the "place of the wrong" is typically where the purchase occurs). Purchases made by Iowa consumers in Iowa are quintessentially Iowa transactions. Applying California's antitrust statute to those purchases would allow California to regulate commerce occurring outside its territory.

The certification order never answered the operative question: Whether the Cartwright Act may govern transactions occurring entirely outside California.

That threshold issue should be resolved first. If the Cartwright Act cannot govern purchases made outside California, then the certified class necessarily

6

encompasses claims governed by numerous States' antitrust laws. That difference bears directly on Rule 23 predominance.

## II. The Territorial Reach of the Cartwright Act Bears Directly on Class Certification.

The territorial reach of the Cartwright Act is not merely a merits issue. It directly affects the Rule 23 analysis and thus should be decided now.

Rule 23 requires courts to determine whether common issues predominate before certifying a class. *Amchem*, 521 U.S. at 623–24. When a proposed class includes claims governed by the laws of multiple States, courts must consider whether differences among those laws defeat predominance. *Id.* Those differences matter because each State retains authority to define the scope of liability for transactions within its borders.

This Court has repeatedly emphasized that principle. In *Mazza*, the Court reversed certification of a nationwide class where the laws of multiple States governed class members' claims. 666 F.3d at 589–94. Because state consumer-protection laws differed in material respects, applying a single State's law to the entire class would improperly displace other States' policy choices. *Id.* at 590–91. Those differences defeated Rule 23's predominance requirement. *Id.* at 594.

Other courts too have declined to certify multistate classes where differences between States' laws would require the application of multiple bodies of law to resolve class members' claims. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741–43 (5th Cir. 1996); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015–18 (7th Cir. 2002).

The same concern arises in antitrust cases. State antitrust laws vary in important ways, including who may recover damages and under what circumstances. Under federal antitrust law, indirect purchasers generally may not recover damages. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735–36 (1977). Responding to that decision, many States enacted "Illinois Brick repealer" statutes permitting indirect purchasers to seek damages under state law, while other States declined to do so or adopted different limitations on recovery. *See California v. ARC Am. Corp.*, 490 U.S. 93, 101–02 (1989). That is just one example of how the scope of antitrust liability varies across jurisdictions. *See DRAM*, 546 F.3d at 985–88.

Those differences reflect deliberate legislative choices about the proper scope of antitrust enforcement. Some States permit indirect-purchaser damages actions; others restrict such claims or apply different rules governing proof of injury and damages. *See id.* If California law cannot govern out-of-state purchases, the class certified here necessarily includes claims properly governed by other States' antitrust laws.

For that reason, courts should resolve the governing-law question before confirming that a multistate class satisfies Rule 23 predominance.

III. **Applying California Law to Out-of-State Purchases Would Displace Other States' Sovereign Policy Choices.**

A. **States have a sovereign interest in regulating transactions within their borders.**

Applying California law to purchases made in Iowa would override Iowa's sovereign policy choices. State Legislatures balance competing antitrust-enforcement considerations—such as deterrence of anticompetitive conduct, compensation of injured consumers, and the potential economic effects of litigation and damages

remedies. Indeed, Iowa has enacted its own antitrust framework governing competition within the State. *See* Iowa Code §§ 553.4, 553.12. Those laws reflect Iowa's judgment about the appropriate balance between deterrence, compensation, and enforcement.

Other States adopt different approaches to these questions. *See ARC Am. Corp.*, 490 U.S. at 101–02 (recognizing that States may adopt differing antitrust enforcement schemes following *Illinois Brick*). Different States weigh those considerations differently when designing their antitrust regimes. Those deliberate differences should matter. States should be allowed to define the scope of antitrust liability within their own borders. The district court subverts that ability.

This Court's claim-preclusion precedent relating to State consumer protection and antitrust laws raises further concerns about the implications of this class action if the Cartwright claims are lost. *See California v. IntelliGender, LLC*, 771 F.3d 1169, 1181 (9th Cir. 2014). The final result of a class action suit may forbid a state subsequent recovery under its own separate laws. *Id.* at 1182. Although that should not apply here, given the scope of *IntelliGender* that remains an open question in this Court. And underscores the serious sovereignty concerns triggered by the district court's deficient extraterritoriality analysis.

### B. The Constitution limits extraterritorial application of state law.

The Constitution, and our federalist structure, limits a State's ability to project its law beyond its borders.

The Due Process Clause restricts a forum State's ability to apply its law to out-of-state claims. A State may not apply its law unless the forum has a "significant contact or significant aggregation of contacts" with the underlying transactions such that

9

applying its law is neither arbitrary nor fundamentally unfair. *Shutts*, 472 U.S. at 821–22. *Shutts* clarifies that a State cannot impose its regulatory choices on transactions lacking a meaningful connection to the forum. *Id.* That limitation protects the sovereign interests of other States by ensuring that each State retains authority over commerce within its own borders.

More, the Supreme Court has repeatedly held that a State may not project its regulatory regime into other States by controlling transactions taking place elsewhere. *See Healy*, 491 U.S. at 336–37; *Edgar*, 457 U.S. at 642–43. Those decisions reflect a core structural principle of federalism: Each State may regulate its own markets, but not those of its neighbors.

The Iowa transactions swept up in the certified class lack the connection necessary to justify applying California law. Purchases made by Iowans in Iowa occurred entirely outside California, involved no California consumers, and thus implicate the policy choices of another sovereign State. Applying the Cartwright Act to those transactions raises serious constitutional concerns: California lacks the contacts required under *Shutts*, and it would be regulating commerce occurring wholly beyond its borders under *Healy* and *Edgar*.

The certification order risks transforming the Cartwright Act into a nationwide antitrust regime governing transactions across the country—displacing the regulatory choices of other States in the process. Nothing in the statute authorizes that result. Our constitutional structure, and its federalist principles, counsel strongly against it.

## CONCLUSION

This Court should grant the Rule 23(f) petition.

March 19, 2026

Respectfully submitted,

BRENNA BIRD
Iowa Attorney General

*/s/ Eric H. Wessan*
ERIC H. WESSAN
*Solicitor General*

PATRICK C. VALENCIA
*Deputy Solicitor General*
1305 East Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Amicus Curiae State of Iowa*

11

## ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Theodore E. Rokita
Attorney General of Indiana

Liz Murrill
Attorney General of Louisiana

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Gentner Drummond
Attorney General of Oklahoma

Ken Paxton
Attorney General of Texas

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limit of Fed R. App. P. 29(a)(5) and 32(g)(1) and Circuit Rule 5-2(b) because it does not exceed 10 pages, excluding the parts exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Garamond.

March 19, 2026                                     /s/ *Eric H. Wessan*
                                                   *Solicitor General*
                                                   *Counsel for Amicus Curiae State of Iowa*

13

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on March 19, 2026. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

March 19, 2026

/s/ *Eric H. Wessan*
*Solicitor General*

*Counsel for Amici State of Iowa*

14